UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

A.E.A. an infant, by Konstantinos N. Angelopoulos,
her natural parent and next friend,

    Plaintiff,

v.                                                   Civil Action No. 2:14-cv-425-RGD-LRL

VOLVO PENTA OF THE AMERICAS, LLC,
GRADY-WHITE BOATS, INC.,
NORFOLK MARINE COMPANY,
RICHARD S. HARRIS, and
JOHN DOES 1-50,

    Defendants.

### VPA'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO REMAND

VOLVO PENTA OF THE AMERICAS, LLC. ("VPA"), by counsel, and in accordance with Local Rule 7(F), submits this Brief in Response to Plaintiff's Motion to Remand.

### I. INTRODUCTION

This is a maritime action. The issue before the Court is whether this case should proceed in Federal Court. The answer is Yes.

This matter is removable under the general maritime jurisdiction of this Court, as well as under the federal question jurisdiction of this Court. 28 U.S.C. § 1441 (2011); Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, *et seq*.

As set forth below, this Brief in Response first provides this Court with the basis of its original jurisdiction under general maritime law and then under its federal question jurisdiction pursuant to the Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, *et seq*.

In 2011, Congress made substantive changes to 28 U.S.C. § 1441, one of the provisions controlling the removal of general maritime cases. Pursuant to the 2011 amendments, a

defendant may remove to federal court any civil action brought in a state court of which the district courts of the United States have original jurisdiction. This right of removal includes admiralty matters, maritime disputes and federal question issues, as well as any other matter or dispute where original jurisdiction is vested in the district courts of the United States. Accordingly, as a direct result of Congress' changes to Section 1441, certain actions which previously could not be removed to federal court can now be removed. It is the 2011 amendments to Section 1441 that makes the removal of this action proper under the Court's original jurisdiction over all general maritime matters.

Despite bringing claims "pursuant to the general maritime laws of the United States," Plaintiff seeks to avoid the jurisdiction of this Court. (Am. Compl. at ¶ 28.) In her attempt to escape federal jurisdiction, Plaintiff argues that this Court should disregard the plain, unambiguous language of Section 1441 as amended, violating the cardinal rule of statutory construction in the process. Moreover, Plaintiff argues (and speculates) that Congress did not *intend* for actions such as this one to be removable and that Congress' 2011 amendment was superfluous and had no meaning or effect. Under Plaintiff's theory, the 2011 amendment was an act of futility which this Court should simply disregard. Instead, Plaintiff argues that the removal issue before the Court should be decided based on Congress' purported *intentions* rather than Congress' *actions* and the actual language of Section 1441.

The Court should decline Plaintiff's invitation to ignore the basic rules of statutory construction. This Court's role is not to speculate regarding what Congress may or may not have intended in the 2011 amendments, but rather, to focus on what Congress actually said (and did) in amending the statute. Based on the clear and unambiguous language of Section 1441 removal

of this action to this Court is proper. Accordingly, Plaintiff's Motion for Remand should be denied.

Likewise, this Court should decline Plaintiff's invitation to remand this matter back to state court under this Court's federal question jurisdiction pursuant Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, *et seq*. and its regulations, which sets forth the comprehensive statutory and regulatory format established by Congress governing the design, manufacturing and operation of recreational vessels in the United States. On this basis alone, Plaintiff's Motion for Remand should likewise be denied.

## II. FACTS AND BACKGROUND INFORMATION

This is a maritime action arising from a recreational boating accident that occurred in the navigable waters of the Chesapeake Bay, off the coast of Virginia Beach, Virginia. (Am. Compl. at ¶¶ 1-2, and 13). On or about June 30, 2011, while in the navigable waters of the Chesapeake Bay, Plaintiff was injured when her leg became entangled in the propeller of a vessel which was being used for the recreational activity of tubing. (Am. Compl. at ¶¶ 1-2, 12-20). As a result, Plaintiff has asserted maritime personal injury, product liability and boating safety claims.

On or about July 11, 2014, Plaintiff filed her Amended Complaint in the Circuit Court of the City of Norfolk.[1] VPA timely filed responsive pleadings with the Circuit Court, including a Notice of Removal. In and of itself, as a result Congress' 2011 amendments to the removal statute, removal of this action is proper.

---

[1] Plaintiff's Amended Complaint alleges that the vessel involved, a recreational speedboat, was used to traverse the navigable waters of the United States of America (Am. Compl. at ¶ 12) and the subject incident occurred on the navigable waters of the Chesapeake Bay off the coast of Virginia Beach. (Am. Compl. at ¶ 13). Furthermore, the subject incident had the potential of disrupting traditional maritime activity. *See, e.g., In re Bird,* 794. F. Supp. 575 (D.S.C. 1992); *see also Wright v. U.S.,* 883 F. Supp. 60 (D.S.C. 1994).

Specifically, 28 U.S.C. § 1333 states that district courts have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction. Further, 28 U.S.C. § 1441(a) mandates:

> Except as otherwise expressly provided by Act of Congress, **any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants**, to the district court of the United States for the district and division embracing the place where such action is pending.

(emphasis added). Accordingly, when read together, Sections 1333 and 1441 confirm that removal of this action is appropriate and proper. *See Ryan v. Hercules Offshore, Inc.,* 945 F. Supp. 2d 771 (S.D. Tex. 2013); *see also Bridges v. Phillips 66 Co.,* No. 13-477, 2013 WL 6092803, at *4-5 (M.D. La. Nov. 19, 2013); *Wells v. ABC Boat Rentals Inc.,* No. H-13-1112, 2013 WL 3110322, at *3-4 (S.D. Tex. June 18, 2013); Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, *et seq*.

### III. LEGAL ARGUMENT AND AUTHORITIES

**A.   The Savings to Suitors Clause Does Not Prohibit Removal of General Maritime Claims.**

The "savings to suitors" clause of 28 U.S.C. § 1333 does not prevent the removal of general maritime claims from state to federal court. Instead, the saving to suitors clause "does no more than preserve the right of maritime suitors to pursue non maritime *remedies.* The savings to suitors clause does not guarantee a nonfederal *forum,* or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction . . . ." *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir. 1996) (emphasis in the original); *accord*, *Lewis v. Lewis & Clark Marine Inc.*, 531 U.S. 438, 445-46 (2001) ("the saving to suitors clause preserves remedies"); *see also The Moses Taylor,* 71 U.S. 411, 431 (1866) ("It is not a remedy in the common-law courts which is saved, but a common-law

4

remedy."). In other words, the statute's "saving to suitors" clause simply makes state court remedies available to a plaintiff in either federal or state court.

An analysis of the savings to suitors clause begins with the principles governing federal jurisdiction, which originate in the United States Constitution. Article III of the United States Constitution vests in federal courts original jurisdiction over "all Cases of admiralty and maritime jurisdiction." U.S. Constitution Art. III, cl. 2 § 1. The Constitution did not vest original jurisdiction over admiralty and maritime cases in state courts. Instead, the state court's concurrent jurisdiction came through a grant of authority by Congress, pursuant to the Judiciary Act of 1789, the precursor to 28 U.S.C. § 1333(1).

As stated in 28 U.S.C. § 1333 (enacted in 1949):

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other **remedies** to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

(emphasis added).

This statutory provision, which became known as the "saving-to-suitors" clause, was viewed as a federal grant to state courts providing authority to hear general maritime claims if a plaintiff elected to file in state court instead of in federal court. The result, as described by the U.S. Supreme Court in *Lewis v. Lewis & Clark Marine Inc.*, 531 U.S. 438, 445 (2001), was that the jurisdiction of state and federal courts was deemed "concurrent."

Plaintiff's argument that federal admiralty jurisdiction does not exist in this case is a red herring. While Plaintiff has not brought an *in rem* case in admiralty, she has brought claims under the general maritime laws of the United States. (Am. Compl. at ¶ 28.) The fact that

5

Plaintiff filed in state court does not guarantee that she stays there, but, instead, simply, guarantees that her common-law remedies are preserved. *Id*. at 445-46 ("the savings to suitors clause preserves remedies").

Under the prior language of 28 U.S.C. § 1441, Defendants could not remove general maritime claims. However, as discussed *supra,* the 2011 amendments to Section 1441 removed that obstacle thus making removal of this action permissible. The savings to suitors clause never prohibited removal of maritime cases to federal court; instead, it was Section 1441 that required maritime jurisdiction plus something else — either diversity or federal question jurisdiction. The "plus something else" requirement was removed by Congress as part of the 2011 amendments, and, therefore, the savings to suitors clause does nothing more than what it was originally intended to do — preserve common law *remedies.*

B.  **Pursuant to 28 U.S.C. § 1441 (2011), Maritime Claims Are Removable to Federal Court as a Matter of Right.**

As a result of the 2011 statutory changes to 28 U.S.C. § 1441, which sets forth the basis and procedures for removal of maritime cases, the old interpretation of 28 U.S.C. § 1333 can no longer limit the application of 28 U.S.C. § 1441 (2011). Removal of maritime cases is no longer limited by a federal statute, and, therefore, admiralty and maritime jurisdiction is once again vested in the federal courts and no longer limited by any other statute.

   1.  **28 U.S.C. § 1441 Prior to December 2011.**

Prior to 2011, 28 U.S.C. § 1441 (1988) provided, in relevant part, as follows:

(a) **Except as otherwise expressly provided by a congressional act,** any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

6

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right **under the U.S. Constitution, treaties or laws of the United States** shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought.

(emphasis added).

Based on this prior version of the statute, Subsection (b) was interpreted to be "a congressional act" that limited the ability to remove a case to federal court under subsection (a). Under subsection (b), only claims arising "under the Constitution, treaties or laws of the United States" were exempted from the limitation that a party wishing to remove a matter to federal court that had original jurisdiction must also be able to demonstrate diversity of citizenship.

The constitutional grant of federal jurisdiction in Article III contemplates three "distinct classes of cases," those that: (i) arise under the U.S. Constitution, the laws of the United States, or treaties; (ii) affect ambassadors, public ministers, and consuls; and (iii) arise under admiralty or maritime jurisdiction. *American Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511, 545 (1928). Thus, prior to the 2011 amendment of Section 1441, it had long been held that maritime cases, in and of themselves, did not "arise under" the Constitution, laws or treaties of the United States. *Romero v. Int'l Term. Op. Co.*, 358 U.S. 354, 369-71 (1959). Therefore, prior to the 2011 amendments, in order to remove a general maritime case under the prior version of Section 1441, some other basis for removal jurisdiction (i.e., federal question or diversity) was required. *Norton v. Switzer*, 93 U.S. 355, 356 (1876); *see e.g.,* Federal Boat Safety Act of 1971, 46 USC §§ 4301, *et seq*. Congress' 2011 amendment to Section 1441 removed this requirement.

### 2. 28 U.S.C. § 1441 after the December 2011 Amendments.

In December 2011, Section 1441 was substantially amended to provide that:

(a) Generally — Except as otherwise expressly provided by a congressional act, **any civil action brought in a state court of which the district courts of the**

7

> **United States have original jurisdiction, may be removed by the defendant or the defendants**, to the district court of the United States for the district and division embracing the place where such action is pending.
>
> (b) Removal based on diversity of citizenship —
>
> > (1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded. [2]
> >
> > (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendant is a citizen of the State in which such action is brought.

(emphasis added.) As a result of the amendments, general maritime cases became removable as a matter of right without regard to diversity of citizenship. Notably, the amendments deleted the previous requirement that a case must arise "under the Constitution, treaties or laws of the United States" to be removable. The amendments also removed any requirement limiting removal only to circumstances where diversity of citizenship existed. Now, as the title and substance of subsections (a) and (b) make clear, the prior additional hurdle to the removal of maritime claims to federal court, *i.e.*, that diversity must exist or that the action must arise under the U.S. Constitution, treaties or laws of the United States, has been removed.

> 3. **The plain and unambiguous language of Section 1441 confirms that removal of this action is proper.**

Section 1441, as amended, is plain on its face and must be followed. Congress "says in a statute what it means and means in a statute what it says." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5 (2000) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)). When "the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (quoting *Caminetti*

---

[2] 28 U.S.C. § 1332 governs removal based upon diversity of citizenship, amounts in controversy and costs.

*v. United States,* 242 U.S. 470, 485 (1917)); *see also CSX Transp., Inc. v. Georgia State Bd. of Equalization*, 552 U.S. 9, 19 (2007) ("When we find the terms of a statute unambiguous, judicial inquiry is complete . . . ."); *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992) ("The controlling principle ... is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written."); *U.S. v. Abdelshafi*, 592 F.3d 602, 607-08 (4th Cir. 2010) ("A statute's plain meaning is determined by reference to its words' ordinary meaning at the time of the statute's enactment"; *** "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

The plain language of Section 1441 now makes nondiversity cases removable if the federal court enjoys original jurisdiction over them, except where Congress has "expressly provided" otherwise. Congress clearly knows how to make such express provisions when it desires to do so. *See* 28 U.S.C. § 1445. Congress did not include general maritime law claims among those suits that cannot be removed.[3]

    **4.**    <u>**Cases Supporting Removal.**</u>

Several courts have adopted the plain language, strict construction, reasoning outlined above, concluding that the 2011 amendments to Section 1441 make general maritime claims removable. As the Court held in *Ryan*, 945 F. Supp. 2d at 776-78 (a maritime personal injury

---

[3] In addition to plain statutory construction principles, the principle that a specific statute governs a general one is also applicable to any analysis of 28 U.S.C. § 1441 in conjunction with 28 U.S.C. § 1333. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992).

> The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one. See, *e.g., Morton v. Mancari,* 417 U.S. 535, 550–551 (1974).

In applying the above rule, 28 U.S.C. § 1441 (2011), a specialized statute dictating the requirements to remove a case, also dictates the procedure to be followed, and, thus, governs over 28 U.S.C. § 1333 (1949), which is a statute of general application setting forth the basis of federal court jurisdiction over all admiralty and maritime cases.

claim involving a worker on an offshore drilling platform suffering a heart attack), under 28 U.S.C. § 1441 (2011) such a claim is removable to federal court without regard to the diversity of citizenship of the parties because it is within the original jurisdiction of the federal courts:

> The new version of section 1441(b) speaks solely to cases that are removed on the basis of diversity of citizenship. Plaintiffs have not suggested that some other act of Congress prohibits removal. Instead, Plaintiffs argue that the amendment is not substantive and that the court should look to the legislative history of the amendment, which Plaintiffs claim indicates that the changes to section 1441 are not substantive.
>
> While it is possible that Congress did not intend for the changes to section 1441 to be substantive, it nevertheless made substantial changes to the text of section 1441(b). The new statute does not contain any ambiguous language. Under the amendment, as under the prior version, federal district courts may exercise removal jurisdiction over cases for which they have original jurisdiction unless an act of Congress prohibits that exercise of jurisdiction. Section 1441(b), however, is no longer an "Act of Congress" prohibiting that exercise in admiralty cases involving non-diverse parties. Instead, Congress expects courts to look to the new version of section 1441(b) only when ascertaining removability of cases removed on the basis of diversity—hence the new title of the section, "Removal based on diversity of citizenship."
>
> In the Fifth Circuit, the "law is crystal clear that when ... the language of a statute is unambiguous, [the court] has no need to and will not defer to extrinsic aids or legislative history.... Clear statutory language is dispositive. To paraphrase Justice Holmes's oft-quoted statement, we do not inquire what Congress meant; we only ask what it said." *Guilzon v. C.I.R.,* 985 F.2d 819, 823 (5th Cir.1993). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (citations and quotations omitted). Here, given the indication in prior case law that the saving to suitors clause does not guarantee a nonfederal forum, an amendment allowing removal is not absurd. Thus, the court may not consider the legislative history.

The Court in *Wells v. Abe's Boat Rentals Inc.*, reached the same conclusion. *Wells,* 2013 WL 3110322, at *3-4 ("The *Ryan* court's analysis of the effect of the amended version of the removal statute is consistent with the case law analyzed."). The reasoning of both *Ryan* and *Wells* was adopted outside the Southern District of Texas in *Bridges v. Phillips 66 Co.* and in the

10

report and recommendation filed in *Harrold v. Liberty Insurance Underwriters, Inc. See Harrold v. Liberty Insurance Underwriters, Inc.,* No. 13-762 (M.D. La. Jan. 21, 2014); *Bridges,* 2013 WL 6092803, at *4-5. As stated in *Bridges*, "[n]ow that this language has been removed, nothing in § 1441 or another Act of Congress prevents removal of general maritime claims. Both *Wells* and *Ryan* demonstrate that the amendment to § 1441 allows removal of maritime claims." *Id.*[4]

While Plaintiff relies on a line of cases that have held opposite of *Ryan,* Plaintiff's reliance on those cases is misplaced. *See Perrier v. Shell Oil Co.*, No. 14-490, 2014 WL 2155258 (E.D La. May 22, 2014), *Coronel v. AK Victory*, 1 F. Supp. 3d 1175 (W.D Wash. 2014) and *Gregoire v. Enter. Marine Servs., LLC*, No. 14-840, 2014 WL 3866589 (E.D. La. Aug. 6, 2014). Specifically, *Perrier and Gregoire* did not follow the plain language of the current version of Section 1441(a). For example, the Court in *Perrier* stated that "[t]his Court is certain that if Congress had *intended* to open the federal courts to an entirely new class of cases that had historically been excluded 'we can hardly *suppose* that it would have failed to use some appropriate language to express that intention." *Perrier,* 2014 WL 2155258, at *3 (emphasis added).

In *Cassidy v. Murray,* the district court stated that it "was not inclined to reject decades of well-established law to adopt an unsettled attempt to alter the course of removal procedures without clear, binding, precedent." *Cassidy v. Murray,* No. GLR-14-1204, 2014 WL 3723877, at *5 (D. Md. July 24, 2014). However, the clear, binding precedent is the statute's plain and unambiguous language. Congress meant what it said when it removed the language which created an obstacle to removing general maritime claims. *Maine v. Thiboutot,* 448 U.S. 1, 8 (1980) ("Petitioners' arguments amount to the claim that had Congress been more careful, and

---

[4] While *Bridges* was a report and recommendation from a federal magistrate judge, the opinion was adopted fully by the district court. *See Bridges v. Phillips 66 Co.*, 2013 WL 6092803, at *4-5.

11

had it fully thought out the relationship among the various sections, it might have acted differently. That argument, however, can best be addressed to Congress . . . .").

In short, the cases upon which Plaintiff relies disregard the plain language of the statute and instead engage in speculation and guesswork regarding what Congress may or may not have intended in amending the statute. Plaintiff makes the same argument in this action – that the Court should ignore the plain language of the statute and instead make a decision based on Plaintiff's speculation regarding what Congress intended to do rather than what Congress actually did. *Germain,* 503 U.S. at 253-54 ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says . . . . When the words of a statute are unambiguous, then, this first canon [of interpretation] is also the last: judicial inquiry is complete.") (internal quotations omitted).

The Court should decline Plaintiff's invitation to speculate and guess what Congress intended in amending the statute. The issue is what Congress did in amending the statute, not speculation as to what Congress may have intended. *Lamie v. United State Trustee,* 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result") (internal quotations omitted). The Court should apply the plain and unambiguous language of the statute and deny Plaintiff's motion for remand.

> 5. **The Legislative History to 28 U.S.C. §1441 (2011) Provides Ample Support That the Amendment to Section 1441 Allows Removal of Maritime Claims.**

As demonstrated, strict construction of Section 1441 results in only one conclusion – removal of this action is proper. Recognizing that strict construction deals a fatal blow to her position, Plaintiff argues that the Court should ignore the plain language of the Section 1441 and

instead examine the legislative history for clues as to Congress' intent. Section 1441 is not ambiguous, and therefore, a review of the underlying legislative history is unnecessary. However, even if the Court were to review the legislative history with respect to the 2011 amendments, the Court would find ample support for VPA's position that the amendments were intended to make substantive changes to the removal statute.

Contrary to Plaintiff's claim that "the Legislative History is plain that no substantive changes in the removal statute was intended" (See Plaintiff's Motion to Remand, p. 8, ¶ 3), the Legislative History provides a different view.

> H.R. No. 112-10 (2011) states in pertinent part:
>
> SEC. 103. REMOVAL AND REMAND PROCEDURES.
>
> Section 103 amends sections 1441 and 1446 of title 28 to make improvements in the removal statutes. Some of these proposed statutory changes in this section are similar to those included in the ALI Project.
>
> PROPOSED AMENDMENTS TO SECTION 1441
> * * *
> Joinder of Federal law claims and state law claims
>
> **Section 103(a)(4) of the bill would amend subsection 1441(c) to clarify the right of access to Federal court upon removal for the adjudication of separate Federal law claims that are joined with unrelated state law claims**. Subsection 1441(c) presently authorizes a defendant to remove the entire case whenever a "separate and independent" Federal question claim is joined with one or more non-removable claims. That subsection also states that, following removal, the district court may either retain the whole case or remand all matters in which state law predominates.
> * * *
> **This section of the bill is intended to make changes to better serve the purpose for which the statute was originally designed, namely to provide a Federal forum for the resolution of Federal claims that fall within the original jurisdiction of the Federal courts. The amendment to subsection 1441(c) would permit the removal of the case but require that a district court remand unrelated state law matters. This sever-and-remand approach is intended to cure any constitutional problems while preserving the defendant's right to remove claims arising under Federal law.**

> Sections 103(a)(5), (6), and (7)(A) of the bill insert appropriate headings for subsections 1441(d), (e), and (f) for ease of reference.

(emphasis added). H.R. No. 112-10, at 11-12 (2011) (attached hereto as Exhibit 1).

Therefore, while it is neither necessary nor appropriate for the Court to consider the legislative history in light of the clear and unambiguous statutory language, the legislative history reflects Congress' intent to "provide a Federal forum for the resolution of Federal claims that fall within the original jurisdiction of the Federal courts." Accordingly, the claims in this case are removable under the current language in Section 1441.

**B.     Section 1441 and Federal Question Jurisdiction under the Federal Boat Safety Act of 1971.**

Plaintiff's Motion to Remand ignores the fact that VPA removed this matter to federal court pursuant to 28 U.S.C. § 1441, under the Court's federal question jurisdiction. In accordance with Section 1441, a defendant may remove to federal court any civil action brought in a state court of which the district courts of the United States have original jurisdiction. As discussed, this right of removal unquestionably includes federal question issues, maritime disputes and admiralty matters.

In the Motion to Remand, Plaintiff ignores the comprehensive federal statutory scheme which governs the safety, use, operation and manufacture of recreational vessels, commonly known as the Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, *et seq.* As 46 U.S.C. § 4301 states:

> (a) **This chapter applies to a recreational vessel and associated equipment carried in the vessel on waters subject to the jurisdiction of the United States** (including the territorial sea of the United States as described in Presidential Proclamation No. 5928 of December 27, 1988) and, for a vessel owned in the United States, on the high seas.

(emphasis added). Similarly, as 46 U.S.C. § 4302 states, in pertinent part:

(a) **The Secretary may prescribe regulations**--

(1) establishing minimum safety standards for recreational vessels and associated equipment, and establishing procedures and tests required to measure conformance with those standards, with each standard--

(A) meeting the need for recreational vessel safety; and

(B) being stated, insofar as practicable, in terms of performance;

(2) **requiring the installation, carrying, or use of associated equipment (including fuel systems, ventilation systems, electrical systems, sound-producing devices, firefighting equipment, lifesaving devices, signaling devices, ground tackle, life- and grab-rails, and navigational equipment) on recreational vessels and classes of recreational vessels subject to this chapter, and prohibiting the installation, carrying, or use of associated equipment that does not conform with safety standards established under this section** . . . .

(emphasis added). Finally, as set forth in 46 U.S.C. § 4306:

Unless permitted by the Secretary under section 4305 of this title, **a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment** (except insofar as the State or political subdivision may, in the absence of the Secretary's disapproval, regulate the carrying or use of marine safety articles to meet uniquely hazardous conditions or circumstances within the State) **that is not identical to a regulation prescribed under section 4302 of this title**.

(emphasis added).

Accordingly, pursuant to 46 U.S.C. § 4302 and § 4306, the Secretary issued numerous regulations, to include the regulations found at 33 CFR Part 181 – Manufacturer Requirements. In regard thereto, as 33 CFR § 181.1 states:

This part prescribes requirements for certification of boats and associated equipment and the identification of boats to which 46 U.S.C. chapter 43 applies. **The regulations in this part have the preemptive effect described in 46 U.S.C. 4306**.

(emphasis added). Likewise, as set forth in 33 CFR § 181.5, which incorporates the safety standards prescribed elsewhere in the regulations:

> **This subpart prescribes requirements for the certification of boats and associated equipment to which 46 U.S.C. applies and to which a safety standard prescribed in Part 183 of this chapter applies.**

(emphasis added).

As set forth in the Act itself, the Federal Boat Safety Act (FBSA) of 1971 was enacted "to improve boating safety" by authorizing "the establishment of national construction and performance standards for boats and associated equipment" and to encourage greater "uniformity of boating laws and regulations as among the several States and the Federal Government."

As a result, the United States Coast Guard has issued numerous regulations requiring compliance with the FBSA that preempt any contrary state authority. These regulations address, but are not limited to, boat performance and safety standards. *See e.g.,* 33 CFR Part 183 (Boats and Associated Equipment), i.e., 33 CFR 183.5 – Incorporation by Reference of ASTM, IEEE, NFPA, SAE and UL Standards; 33 CFR Part 175 (Boating Safety-Equipment Requirements); 33 CFR Part 177 (Correction of Hazardous Conditions), i.e., 33 CFR 177.07, governing Unsafe Conditions due to (1) Unsuitable design or configuration, (2) Improper construction or inadequate material condition, or (3) Improper or inadequate operational or safety equipment.

Accordingly, in light of the allegations of Plaintiff's Amended Complaint which asserts maritime product liability claims involving a recreational vessel, federal question jurisdiction exists under the FBSA to address Plaintiff's boating safety and product liability claims.

Furthermore, inasmuch as the Coast Guard has issued precise regulations providing specific standards governing the design and manufacture of boats and associated equipment,

16

such as electrical and fuel systems, ventilation, and "start-in-gear protection" devices, any contrary state regulatory or common law claims are preempted.

As the Court held in *Alongi v. Bombardier Recreational Prods., Inc.*, No. 12-13374, 2013 WL 718755, at *3 (E.D. Mich. Feb. 27, 2013) (product liability and breach of warranty lawsuit against a defendant manufacturer and a defendant marina arising from a 2008 speed boating accident that cost the life of a passenger) it had federal question jurisdiction under the FBSA. As was the case in *Alongi*, Plaintiff's claims necessarily involve important federal issues giving rise to federal-question jurisdiction. *Board of Com'rs of the Southeast Louisiana Flood Protection Auth. v. Tennessee Gas Pipeline Co., LLC, et al,* No. 13-5410, 2014 WL 2943602, at *32 (E.D. La. June 27, 2014).

Finally, as the Court held in *Schepis v. Local Union No. 17, United Broth. of Carpenters and Joiners of America*, 989 F. Supp. 511 (S.D. N.Y. 1998), if Congress mandates complete preemption, a plaintiff may not avoid removal by artfully pleading his complaint to rely upon state law.

## IV. CONCLUSION

At its core, Plaintiff asserts that the dispute at issue is the interpretation of Section 1441. VPA maintains that, after the 2011 amendments, the plain, unambiguous language of the statute makes the removal of this action proper on that basis alone. Plaintiff argues that the Court should disregard the language of Section 1441 and instead decide this issue based on speculation and guesswork about what Congress may have intended in the 2011 amendments.

The role of the courts is to construe the laws as they are written, not to issue opinions based on speculation about what Congress intended to do. To the extent that Congress' amendment of the statute resulted in unintended consequences, that is an issue for Congress to

address as part of the legislative process, not an issue to be addressed by legislating from the bench. Based on the plain, unambiguous language of Section 1441 removal of this action is proper. Accordingly Plaintiff's Motion for Remand should be denied and the parties should proceed with the case.

In further response to Plaintiff's assertions, VPA submits there is no dispute except for Plaintiff's artful pleading, by and through which Plaintiff has studiously ignored the federal question jurisdiction of the Court pursuant to Federal Boat Safety Act of 1971, 46 U.S.C. §§ 4301, *et seq*. As a result, pursuant to the Court's federal question jurisdiction under the Federal Boat Safety Act of 1971, Plaintiff's Motion for Remand should also be denied and the parties should proceed with the case.

VOLVO PENTA OF THE AMERICAS, LLC

By Counsel

_____/s/_____
Charles K. Seyfarth (VSB No. 44530)
Meagan A. Mihalko (VSB No. 80703)
LeClairRyan
Riverfront Plaza – East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7159
Facsimile: (804) 916-7259
Charles.Seyfarth@leclairryan.com
Meagan.Mihalko@leclairryan.com

Jay D. O'Sullivan (Fla. Bar No.: 021905)*
Deborah S. Verley (Fla. Bar No.: 140465)*
Quintairos, Prieto, Wood & Boyer, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, Florida 33156
Telephone: (305) 670-1101
Facsimile: (305) 670-1161
josullivan@qpwblaw.com

dverley@qpwblaw.com
*admitted *pro hac vice*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notifications of such filing to the following:

Edward W. Wolcott, Jr., Esq.
Adam M. Carroll, Esq.
Wolcott, Rivers & Gates
Convergence Center IV
301 Bendix Road, Suite 500
Virginia Beach, VA 23452
Telephone: (757) 497-6633
Facsimile: (757) 497-7267
wolcott@wolriv.com
acarroll@wolriv.com
*Counsel for Plaintiff*

Deborah C. Waters, Esq.
Waters Law Firm, P.C.
Town Point Center Building, Suite 600
150 Boush Street
Norfolk, Virginia 23510
(757) 446-1434 (Office)
(757) 446-1438 (Fax)
dwaters@waterslawva.com
*Counsel for Plaintiff*

James L. Chapman, IV (Jim)
C. Wiley Grandy
Crenshaw, Ware & Martin PLC
150 West Main Street, Suite 1500
Norfolk, VA 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
cwgrandy@cwm-law.com
*Counsel for Grady-White Boats, Inc.*

T. Wayne Williams (Wayne)
Melissa L. Bailey
Williams Deloatche, P.C.
924 Professional Place, Suite B
Chesapeake, VA 23320
Telephone: (757) 547-5555
Facsimile: (757) 547-5515
twwilliams@wd-law.com
*Counsel for Norfolk Marine Company*

Patrick M. Brogan
Davey & Brogan PC
101 Granby Street, Suite 300
Norfolk, VA 23510
Telephone: (757) 622-0100
Facsimile: (757)622-4924
pbrogan@daveybroganpc.com
*Counsel for Richard S. Harris*